**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
TRUSTEES OF THE UNITED UNION OF
ROOFERS, WATERPROOFERS AND
ALLIED WORKERS LOCAL 154
WELFARE, PENSION, ANNUITY, AND
APPRENTICESHIP AND TRAINING
FUNDS,

                        Plaintiffs,

          -against-

DME CONSTRUCTION ASSOCIATES and
ACSTAR INSURANCE COMPANY,

                        Defendants.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 15-4176 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

Plaintiffs Trustees of the United Union of Roofers, Waterproofers and Allied Workers Local 154 Welfare, Pension, Annuity, and Apprenticeship and Training Funds ("Plaintiffs" or "Trustees"), commenced this delinquent contributions action against Defendants DME Construction Associates ("DME") and Acstar Insurance Company ("Acstar") (collectively, the "Defendants"), pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), and Section 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145.  On February 8, 2016, the parties entered into a Stipulation of Dismissal, without prejudice, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.  DE 28.  The Stipulation of Dismissal was "so ordered" by Judge Seybert on February 10, 2016.  DE 29.  Judge Seybert's Order further directed the Clerk's Office to mark

the case "closed." *Id*. Thereafter, on March 1, 2016, Plaintiffs filed a motion seeking judicial approval of a consent judgment.[1] DE 30-31. Subsequently, on October 13, 2016, Judge Seybert referred Plaintiff's motion to this Court for a Report and Recommendation as to whether the motion should be granted. DE 33. For the reasons that follow, the Court respectfully recommends to Judge Seybert that Plaintiffs' motion be DENIED.

## II. BACKGROUND

### A. Factual Background

#### 1. *The Complaint*

Plaintiffs in this action are employer and employee trustees of multiemployer labor-management trust funds (the "Funds") which constitute employee benefit plans within the meaning of 29 U.S.C. § 1002(3). Compl. ¶ 4. Defendant DME is a New York Corporation with a principal place of business located at 126 Old Field Road, Setauket, New York 11733. *Id*. ¶ 5. Defendant Acstar is an insurance company organized under the laws of the State of New York with its principal place of business at 30 South Road, Farmington, Connecticut. *Id*. Non-party, the United Union of Roofers, Waterproofers and Allied Workers, Local No. 154, AFL-CIO (the "Union"), is a labor organization existing within the meaning of 29 U.S.C § 185 which represents employees in an industry affecting commerce as defined in 29 U.S.C. § 142. Compl. ¶ 7.

From December 2014 through May 2015, DME was a party to a Collective Bargaining Agreement (the "CBA") with the Union. *Id*. ¶¶ 8, 11. The CBA required DME to make specific hourly contributions to the Funds in connection with all work performed in the trade and

---

[1] Although styled as a motion seeking approval of a consent judgment, the motion is more accurately described as one seeking enforcement of a settlement agreement. The Court will therefore refer to the motion as such in this Report and Recommendation.

geographical jurisdiction of the Union ("Covered Work"). *Id*. ¶ 9. As part of its obligations under the CBA, DME was also required to submit periodic reports, furnish books and payroll records when requested and submit any disputes to binding arbitration. *Id*. ¶ 10. From December 2014 through May 2015, employees of DME performed Covered Work. *Id*. ¶ 11. Notwithstanding all such work performed, DME failed to remit required contributions to the Funds in the amount of $65,432.76. *Id*. In failing to remit the required contributions, DME breached the terms of the CBA as well as the requirements of 29 U.S.C. § 1145. *Id*. ¶ 14. As such, Plaintiffs seek damages in the form of all outstanding contributions, plus interest at a rate of 10% per annum, as well as liquidated damages of 10% of the principal amount due and all reasonable attorney's fees and costs. *Id*. ¶¶ 15-17.

Plaintiffs assert that Acstar issued Bond No. F21659 (the "Bond") to DME for the sum of $20,000. By issuing of the Bond, Acstar undertook an obligation to pay any and all contributions for work performed from the date of issuance forward, plus interest, up to the face value of the Bond. *Id*. ¶ 19. In light of the fact that DME failed to remit the contributions required by the CBA, Plaintiffs allege that Acstar is liable to Plaintiff for the outstanding contributions as well as interest of $20,000 for all work performed by DME. *Id*. ¶ 20.

### 2. *The Stipulation of Settlement and Proposed Consent Judgment*

On or about February 9, 2016, DME entered into a Stipulation of Settlement (the "Stipulation") with Plaintiffs wherein DME agreed to remit a total of $131,573.[2] March 1, 2016 Affirmation of Nicole Marimon ("Marimon Aff.") [DE 31] ¶ 6; *id.*, Exhibit ("Ex.") A (the Stipulation) ¶ 1. Specifically the total agreed upon sum represented the following amounts:

---

[2]     The Stipulation was also entered into by Peter Chardon, a non-party to the instant action. *See* Marimon Aff., Ex. A, Preamble. Although Chardon's relationship to this litigation is not explicitly set forth in either the Marimon Affirmation or the Stipulation, the Court presumes that Chardon is the principal of DME.

3

(1) contributions for December 2014 in the amount of $503.60; (2) contributions for January 2015 in the amount of $11,602.32; (3) contributions for June 2015 in the amount of $27,046.50; (4) contributions for July 2015 in the amount of $28,955.78; (5) contributions for August 2015 in the amount of $24,221.50; (6) contributions for September 2015 in the amount of $15,903.18; (7) contributions for October 2015 in the amount of $12,033.77; (8) interest thereon of $3,607.27; (9) interest on previous late payments in the amount of $902.87; and (10) attorneys' fees in the amount of $6,796.21.  Marimon Aff., Ex. A ¶ 1.  The total sum was to be paid in three monthly installments as follows:  one monthly installment of $55,804.47 to be remitted on or before December 2, 2015; one monthly installment of $37,884.27 to be remitted on or before January 2, 2016; and one monthly installment of $37,884.26 to be remitted on or before February 2, 2016.  *Id.* ¶ 2.  In addition to the payment obligations, the Stipulation also required DME to immediately enter into a Consent Judgment with Plaintiffs.  *Id.* ¶ 5. The Consent Judgment was to be held in escrow by Plaintiffs' counsel and only utilized and enforced in the event of an uncured default.  *Id.*  Further, the Stipulation required the parties to enter into a Stipulation of Dismissal which was to be "so ordered" by the Court.  *Id.* ¶ 8.

Paragraph 9 of the Stipulation provides that in the event DME fails to comply with the payment schedule as set forth in Paragraph 2,

> Defendants shall be deemed in default of the Stipulation of Settlement. Plaintiffs or their authorized agent shall mail certified mail return receipt requested or deliver a notice of such default addressed to Peter Chardon, DME Contracting Co., Inc., 126 Old Field Road, Setauket, New York 11733, unless the Defendants shall have notified Plaintiffs in writing of another address for the giving of such notice. Such default may be cured by making payment of

> the installment or installments then due to Plaintiffs within five (5) business days of receipt of Plaintiffs' notice of default.

*Id.* ¶ 9. The Stipulation also provided that in the event DME failed to cure the default in accordance with the provisions of Paragraph 9, "the entire unpaid balance of the Settlement Amount shall become accelerated and shall become immediately due. Additionally, liquidated damages of $12,026.67, waived under this Settlement Agreement, will be reinstated and become immediately payable." *Id.* ¶ 10. This failure to cure would also trigger Plaintiffs' right to enter and docket the Consent Judgment, "as well as take any and all additional steps, in law or equity, necessary to execute upon and satisfy the Judgment entered pursuant to this Stipulation of Settlement. . . ." *Id.*

The Consent Judgment itself was executed by the parties but is not dated. Likewise, the Court notes that the copy of the proposed Consent Judgment submitted as Exhibit B is not "so ordered" by Judge Seybert. Marimon Aff., Ex. B. As is pertinent here, the Consent Judgment provides, in part, that "Defendant DME shall pay this Judgment in accordance with the terms and conditions of the accompanying Stipulation of Settlement, which is incorporated herein by reference." *Id.* ¶ 2. "In the event of an uncured default under the Stipulation of Settlement, Plaintiffs may file a declaration informing this Court of such failure. Upon the filing of such declaration, Plaintiffs will be entitled to enforce this Judgment by all means permitted by law." *Id.* ¶ 3. In addition, the Consent Judgment provided that, "[t]his Court retains jurisdiction solely to enforce compliance with the terms of this Consent Judgment and the accompanying Stipulation of Settlement." *Id.* ¶ 5.

### 3. *DME's Failure to Abide by the Terms of the Stipulation*

Notwithstanding DME's obligations under Paragraph 2 of the Stipulation, Plaintiffs assert that DME has failed to remit the second and third installment payments. Upon such

5

failure, Plaintiffs, via certified mail on February 9, 2016 and via first class mail on February 19, 2016, notified DME of its default. Marimon Aff. ¶ 12. Despite such notice, Plaintiffs state that DME remains in default. *Id*. ¶ 13. Thus, Plaintiffs seek to have the Court enter the Consent Judgment and award Plaintiffs damages in the total amount of $87,795.20. *Id*. ¶ 15.

### B. Procedural History

Plaintiffs filed their Complaint on July 16, 2015. DE 1. The Summons was served upon DME on July 27, 2015. DE 5. Likewise, the Summons on Acstar was served on July 31, 2015. DE 6. On September 10, 2015, Plaintiffs' counsel advised the Court that the parties "have reached a tentative settlement agreement" and that in the event "the settlement is approved . . . Plaintiffs will file a motion dismissing the action." DE 14. Thereafter, on October 7, 2015, counsel for the Plaintiffs advised the Court that the Trustees "approved the settlement" and that "[t]he parties intend to exchange the papers in the upcoming week. The parties anticipate having the settlement agreement finalized within the next few weeks. Upon execution of the settlement agreement, the parties intend to file a stipulation of dismissal." DE 15.

After reviewing the parties' status report [DE 15], the Court directed that "[t]he parties are to file their Stipulation of Discontinuance by November 15, 2015. If the Stipulation is not filed by that date, the parties are to appear before the Court for an Initial Conference on November 30, 2015 at 3:30 p.m." October 9, 2015 Electronic Order. On November 13, 2015, Plaintiffs notified the Court that they needed "additional time to finalize the agreement" and, as such, requested that the Court "extend the deadline to file a stipulation of discontinuance to November 30, 2015." DE 20. The Court granted the motion on November 16, 2015. DE 22. Notwithstanding the previous extension request, Plaintiffs filed a letter motion on November 24, 2015 stating that the parties "were negotiating a revised settlement based on updated settlement amounts and newly accrued contributions" and requesting that the deadline to file the parties'

stipulation of discontinuance be extended to December 30, 2015. DE 24. The Court granted the motion on November 25, 2015. *See* Electronic Order of November 25, 2015.

On January 5, 2016, Plaintiffs filed another letter motion stating that "[a]s of December 31, 2015, Plaintiffs had not received a signed agreement," but that subsequently, on January 5, 2016, an executed agreement had been received. As such, Plaintiffs requested that the Initial Conference scheduled for January 6, 2015 be adjourned. DE 26. The Court granted the motion and, in addition, directed that the stipulation of discontinuance be filed by February 8, 2016. January 28, 2016 Electronic Order.

On February 8, 2016, the parties filed their Stipulation of Dismissal pursuant to Rule 41(a)(1)(A)(ii). DE 28. The stipulation stated that "the above-captioned case is dismissed without prejudice, with each party to bear its own attorneys' fees, costs, and expenses." *Id*. Thereafter, on February 10, 2016, Judge Seybert "so ordered" the Stipulation of Dismissal and directed the Clerk's Office to mark the case closed. DE 29. Plaintiffs' filed the instant motion on March 1, 2016.[3] DE 30-31. On October 13, 2016, Judge Seybert referred Plaintiff's motion to the undersigned for a Report and Recommendation as to whether the motion should be granted. DE 33.

### III.     DISCUSSION

#### A. Plaintiff's Motion to Enforce the Settlement Agreement

Although Plaintiffs' motion is styled as one seeking approval of the proposed Consent Judgment [DE 30], at its core, Plaintiffs are effectively asking the Court to enforce the terms of

---

[3] The Court points out that Plaintiffs' motion is procedurally defective since it does not contain a memorandum of law as required by Local Civil Rule 7.1. The motion could be denied on that basis alone. *See* Local Civil Rule 7.1(a) ("[A]ll motions shall include the following motion papers . . . A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion. . . .").

7

the Stipulation of Settlement as incorporated into the proposed Consent Judgment.[4]  *See* Marimon Aff., Ex. B ("Defendant DME shall pay this Judgment *in accordance with the terms and conditions of the accompanying Stipulation of Settlement, which is incorporated herein by reference*.") (emphasis added).  Indeed, a consent judgment that has not been "so ordered" by the Court — as appears to be the case here — is no more than an agreement between the parties as to the terms of a negotiated settlement.  *See Aguiar v. N.Y.*, No. 06 CIV. 03334, 2008 WL 4386761, at *11 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523 (2d Cir. 2009) (recognizing that "The only difference between a consent decree and any other written stipulation of settlement that may follow a binding oral agreement, is that [a consent decree] is endorsed by the court."); *see also* Black's Law Dictionary (8th ed.) (**"agreed judgment.** A settlement that becomes a court judgment when the judge sanctions it.  In effect, an agreed judgment is merely a contract acknowledged in open court and ordered to be recorded, but it binds the parties as full as other judgments.-Also termed consent judgment; stipulated judgment; judgment by consent.") (emphasis in original).  It follows that, where, as here, the parties entered into a stipulation of settlement, "[t]he Court's sanctioning of the parties' agreement is not necessary to make it binding.  It is merely a means of creating continuing enforcement jurisdiction.  *Aguiar*, 2008 WL 4386761, at *12; *see also Lenington v. Kachkar*, 633 F. App'x 59, 60 (2d Cir. 2016) (recognizing that "[s]ettlement agreements are contracts. . . .").

In the instant case, it appears that neither the Stipulation of Settlement nor the proposed Consent Judgment were "so ordered" by Judge Seybert prior to the case being dismissed without prejudice.  In addition, the Stipulation of Dismissal does not contain any language showing the

---

[4]  As noted earlier, the copy of the Consent Judgment submitted with the motion is not "so ordered" by Judge Seybert.  Thus, the Court refers to that document as the proposed Consent Judgment.

8

parties' intent to have the Court retain jurisdiction in order to enforce the parties' agreement after the case was closed. As such, although Plaintiffs do not address the issue and no opposition to the motion has been filed, given the the procedural posture of this case, the Court must first address whether subject matter jurisdiction exists to adjudicate the instant motion. *See Gonzalez v. Thaler*, 565 U.S. 134, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 1202, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Shanghai China Garments J & Y Imp. & Exp. Corp. v. Brooks Fitch Apparel Grp.*, No. 11 CIV. 2363, 2013 WL 1499378, at *2 (S.D.N.Y. Apr. 11, 2013) ("Jurisdiction is a threshold issue which a court must address and may raise *sua sponte* even if the parties themselves have not raised it."); *Bd. of Trustees of UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 11-CV-3406, 2013 WL 504455, at *2 (E.D.N.Y. Feb. 7, 2013) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*.") (internal citation omitted); *Melchor v. Eisen & Son Inc.*, No. 15 CV 00113, 2016 WL 3443649, at *5 (S.D.N.Y. June 10, 2016) (same).

### 1. *The Law of Subject Matter Jurisdiction*

"An action seeking to enforce a settlement agreement 'is more than just a continuation or renewal of [a] dismissed suit, and hence requires its own basis for jurisdiction.'" *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick v. DiBernardo Tile & Marble Co.*, No. 1:08-CV-00044, 2012 WL 3508931, at *2 (N.D.N.Y. Aug. 14, 2012) (quoting

9

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 378, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *Jerry WWHS Co.*, 2013 WL 504455, at *2. Therefore, "[w]here a case has been dismissed, and the plaintiff thereafter asks the court to enforce the parties' settlement agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act.") *Melchor*, 2016 WL 3443649, at *5 (citing *Kokkonen*, 511 U.S. at 379-80). It follows that "[i]n order for a district court to exercise jurisdiction to enter an enforceable judgment in such circumstances, the court must: (1) have expressly retained jurisdiction over the settlement agreement in its order of dismissal; (2) have incorporated the terms of the settlement agreement in the order of dismissal; or (3) have an independent basis for asserting jurisdiction over the enforcement of the settlement agreement." *Melchor*, 2016 WL 3443649, at *5; *Nicholas v. City of N.Y.*, No. 07-CV-134, 2016 WL 4939347, at *3 (E.D.N.Y. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 4926177 (E.D.N.Y. Sept. 15, 2016); *see Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *2 ("It is 'well-settled' that a district court may 'exercise ancillary jurisdiction to enforce a settlement agreement *only* if the dismissal order expressly retained jurisdiction over that particular agreement, or incorporated it into the order.'") (quoting *State Street House, Inc. v. New York State Urban Development Corp.*, 75 F. App'x 807, 810 (2d Cir. 2003); *Jerry WWHS Co.*, 2013 WL 504455, at *2 (same); *Shanghai China Garments J & Y Imp. & Exp. Corp.*, 2013 WL 1499378, at *2 ("[A] federal court lacks jurisdiction to enforce a settlement agreement in a closed case in the absence of an independent basis for jurisdiction or a dismissal order specifically reserving such authority.") (quoting *Supervalu Inc. v. Ectaco Inc.*, No. 10 CV 5267, 2011 WL 3625567, at *1 (E.D.N.Y. Aug. 12, 2011)); *LaBarbera v. Dasgowd, Inc.*, No. CV-03-1762, 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007); *see also Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996) ("In the absence of

10

[ ] an independent basis for jurisdiction, a federal court has jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement."); *Hendrickson v. United States*, 791 F.3d 354, 360 (2d Cir. 2015) ("[A] district court's power to issue new orders regarding a settlement agreement is terminated by the dismissal of the underlying case, unless special measures are taken. Two of our sister circuits have accordingly held that a district court seeking to retain jurisdiction over a settlement agreement must take one of the steps prescribed by *Kokkonen before* a case is dismissed: a post-dismissal order, necessarily issued by a court that has already lost jurisdiction over the case, is ineffective.") (emphasis in original). Thus, jurisdiction will not lie in instances where the district court merely "plac[es] its 'judicial imprimatur' on the parties' settlement, such as by approving the settlement agreement as fair and adequate." *Melchor*, 2016 WL 3443649, at *6 (citing *Hendrickson*, 791 F.3d at 359) ("The district court's conclusion that its own stamp of 'judicial imprimatur' alone could support its exercise of ancillary jurisdiction over the settlement agreement was . . . error."); *see Mao v. Mee Chi Corp.*, 15cv1799, 2016 WL 675432, at *1 (S.D.N.Y. Feb. 11, 2016) (holding that district court's approval of settlement agreement in FLSA case as fair and reasonable does not create federal jurisdiction to enforce the agreement). In addition, "[a]fter-the-fact statements and actions of the parties, and even of the district court, cannot create ancillary jurisdiction where such jurisdiction was not retained upon dismissal." *Melchor*, 2016 WL 3443649, at *6 (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 306 (2d Cir. 2014)); *see also Hendrickson*, 791 F.3d at 360-61 ("[A]ny action by the district court after the filing of . . . a stipulation [of dismissal] can have no force or effect because the matter has already been dismissed, and therefore amounts to mere "awareness and approval of the

settlement terms, which is insufficient under *Kokkonen*.") (internal citation omitted) (alteration and ellipsis in original); *Nicholas*, 2016 WL 4939347, at *3 (same).

Even where a case has been dismissed "without prejudice," such a phrase, in and of itself, is not imbued with the kind of talismanic significance that it alone can serve as the necessary jurisdictional predicate for a court to enforce a settlement agreement where ancillary jurisdiction is otherwise lacking. *See,e.g.*, *Stone v. Credit Solutions Corp.*, No. 09–CV–281A, 2011 WL 2747572, at *1-2 (W.D.N.Y. June 21, 2011) (no ancillary jurisdiction found to enforce settlement agreement even where action was dismissed "without prejudice to reopen the action if the settlement agreement was not consummated. . . ."); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *2 (no ancillary jurisdiction to enforce settlement despite the fact that the action was "conditionally discontinued without prejudice, reserving Plaintiffs' rights to reopen the action and proceed to entry of judgment"); *Cross Media Marketing Corp. v. Budget Marketing, Inc.*, 319 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (same where the "parties filed a stipulation of discontinuance without prejudice which was approved unconditionally by the Court"); *see also Melchor*, 2016 WL 3443649, at *3, 8 (finding no ancillary jurisdiction where the case was closed and the court "did not expressly retain jurisdiction to enforce the Settlement Agreement or incorporate that agreement's terms in a Court order").

Notwithstanding an absence of ancillary jurisdiction, "[a] district court can nonetheless entertain an action to enforce a settlement agreement if there is 'some independent basis for federal jurisdiction.'" *Jerry WWHS Co.*, 2013 WL 504455, at *3 (quoting *Kokkonen*, 511 U.S. at 382); *see Shanghai China Garments J & Y Imp. & Exp. Corp.*, 2013 WL 1499378, at *2. "'[I]n cases involving settlement agreements whose enforcement requires interpretation or application

12

of ERISA law, courts have ruled statelaw [*sic*] claims preempted and have found federal jurisdiction.'" *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *3 (quoting *Murphy v. First Reliance Standard Life Ins. Co.*, No. 00–CV–6647, 2008 WL 1787672 at *2 (E.D.N.Y. Apr. 17, 2008)). Nevertheless, "even in ERISA cases, courts have found federal jurisdiction lacking where enforcing a settlement agreement requires applying principles of contract law as opposed to interpreting statutory provisions," as is the case here. *Jerry WWHS Co.*, 2013 WL 504455, at *3; *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *3; *Brown v. City of New York*, No. CV 2009–1809, 2012 WL 628496, at *2–3 (E.D.N.Y. Jan. 30, 2012); *LaBarbera*, 2007 WL 1531895, at *2 (finding no subject matter jurisdiction to enforce an ERISA settlement and noting that "[a]ctions to enforce settlement agreements are, in essence, contract actions which are governed by state law"); *see also Bryant v. Emigrant Mortg. Co., Inc.*, No. 10–CV–0102, 2011 WL 3876978, at *6 (E.D.N.Y.Aug.31, 2011) (stating that disputes over federal settlements, even those that resolve federal claims, are "quintessentially . . . of contractual interpretation and performance and wholly governed by state law"); *Stone*, 2011 WL 2747572, at *2 (finding jurisdiction lacking to enforce a settlement agreement when the underlying action involved a federal claim).

### 2. *The Court Lacks Subject Matter Jurisdiction to Adjudicate Plaintiffs' Motion*

In the instant case, there is no indication that the district court retained ancillary jurisdiction to enforce the settlement agreement by either (1) expressly retaining jurisdiction over the settlement agreement in its order of dismissal; or (2) incorporating the terms of the settlement agreement in the order of dismissal. *See Melchor*, 2016 WL 3443649, at *5; *Nicholas*, 2016 WL 4939347, at *3. Rather, a review of the docket shows that neither the Stipulation of Settlement

13

nor the proposed Consent Judgment were provided to the Court for review and approval prior to or contemporaneously with the Stipulation of Dismissal. In fact, the Settlement Agreement and proposed Consent Judgment were first provided to the Court on March 1, 2016, as exhibits to the instant motion, *see* Marimon Aff., Exs. A, B — almost one month after the Stipulation of Dismissal was "so ordered" by Judge Seybert and the case was closed. *See* DE 29 (Stipulation of Dismissal); *see also Cross Media Marketing Corp.*, 319 F. Supp. 2d at 483 (no ancillary jurisdiction to enforce settlement where "the parties filed a stipulation of discontinuance without prejudice which was approved unconditionally by the Court" and where the "settlement agreement never was filed or approved"); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *3 (finding lack of ancillary jurisdiction where the action was "conditionally discontinued without prejudice" but where the "Stipulation and Order did not incorporate the terms of the Agreement . . . [or] explicitly reserve the Court's jurisdiction to enforce the judgment"); *Stone*, 2011 WL 2747572, at *2 (no ancillary jurisdiction to enforce settlement where case was dismissed without prejudice but where "Judge Arcara's Order relating to the Second Settlement Agreement neither 'so ordered' the agreement nor incorporated its terms (Doc. No. 18), nor could it have as the agreement was executed well after entry of Judge Arcara's Order.").

The case of *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick v. DiBernardo Tile & Marble Co.* ("*Bricklayers*") is instructive. In *Bricklayers*, Plaintiffs brought a lawsuit pursuant to ERISA to recover unpaid fringe benefit contributions. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *1. After the Amended Complaint was filed, the parties entered into a "Stipulation and Order of conditional discontinuance" which stated that "the parties had reached a settlement

14

agreement." *Id*. "The Stipulation and Order did not contain the terms of the parties' agreement and contained no language incorporating any such terms." *Id*. The court's order merely stated that "the action is settled and is conditionally discontinued without prejudice reserving Plaintiffs' rights to reopen the action and proceed with the entry of judgment." *Id*. Although the "Stipulation and Order makes mention of an agreement reached . . . no such agreement was presented to the Court." *Id*. Thereafter, plaintiffs filed a motion alleging that defendants had failed to comply with the terms of the settlement agreement and requested that the court enforce the agreement and award plaintiffs a judgment consisting of liquidated damages and attorney's fees. *Id*. In finding that there was a lack of ancillary jurisdiction, the court stated that

> [h]ere, it is clear that the Stipulation and Order did not incorporate the terms of the Agreement. No such language ever appeared in the Stipulation and Order. "In fact, [the Agreement] was never submitted to the Court. Accordingly, under *Kokkonen*, the Court lacks ancillary jurisdiction to hear the settlement dispute."

*Id*. at *3 (alteration in original). In addition, the court concluded that

> a plain reading of the Stipulation and Order does not demonstrate an intent to preserve the Court's jurisdiction over all issues that might arise in relation to the enforcement of the Agreement—a document that the Court had neither inspected, approved, nor incorporated.

As such, the court was unable "to conclude that the Stipulation and Order provides a basis for the Court to exercise ancillary jurisdiction." *Id*.; *accord Cross Media Marketing Corp.*, 319 F. Supp. 2d at 483; *Stone*, 2011 WL 2747572, at *2; *LaBarbera*, 2007 WL 1531895, at *2; *Melchor*, 2016 WL 3443649, at *8 ("[I]n dismissing this action, this Court did not expressly retain jurisdiction to enforce the Settlement Agreement or incorporate that agreement's terms in a Court order. Therefore . . . this Court would lack jurisdiction to enforce the parties' agreement, by entering a judgment or otherwise.").

The factual chronology in this case closely parallels that in *Bricklayers* and consequently requires a similar result. Specifically, Plaintiffs filed their Complaint and thereafter entered into a Stipulation of Settlement and proposed Consent Judgment. Once these documents were executed, the parties filed a Stipulation of Dismissal with the Court which, although explicitly dismissing the case "without prejudice," was otherwise silent as to the Court's continuing jurisdiction following dismissal of the action. Importantly, neither the Stipulation of Settlement nor the proposed Consent Judgment were provided to the Court for review prior to Judge Seybert "so ordering" the Stipulation of Dismissal. In addition, the Stipulation of Dismissal itself is silent as to whether the district court intended to retain jurisdiction over the case for the purpose of enforcing the settlement agreement. The fact that neither the agreement nor the proposed Consent Judgment was provided to Judge Seybert prior to the dismissal of the action necessarily precludes any possibility that either document could have been incorporated by reference into the Stipulation of Dismissal. Thus, "[w]hile the [ ] parties certainly wished to have the Court retain jurisdiction for purposes of enforcing their agreement, they never submitted the settlement agreement to the Court and did not so provide in their stipulation of dismissal. The Court therefore did not retain jurisdiction for the purpose of enforcing the settlement agreement and lacks [ancillary] jurisdiction over plaintiff's current claim." *Cross Media Marketing Corp.*, 319 F. Supp. 2d at 483; *see Jerry WWHS Co.*, 2013 WL 504455, at *2 (court lacked ancillary jurisdiction to enforce terms of settlement agreement where "the Agreement was never presented to the court . . . ."); *Shanghai China Garments J & Y Imp. & Exp. Corp.*, 2013 WL 1499378, at *2 (recognizing that where the court did not explicitly retain jurisdiction nor "see the Stipulation of Settlement until after this case was dismissed . . . the Court could not have incorporated its terms in the dismissal order" and concluding that "this Court lacks ancillary jurisdiction to

enforce the purported settlement"); *LaBarbera,* 2007 WL 1531895, at *2 (same); *see also Melchor*, 2016 WL 3443649, at *9 ("[I]n the circumstances present in this case – where the Court's Order dismissing the case referred to and approved of the settlement's terms, but did not explicitly incorporate those terms or provide for the retention of jurisdiction – this Court does not have continued subject matter jurisdiction to enforce the parties' agreement.").

Having determined that ancillary jurisdiction is lacking here, an independent basis for asserting subject matter jurisdiction must otherwise exist in order for the district court to adjudicate the instant motion. *See Melchor*, 2016 WL 3443649, at *9; *Nicholas*, 2016 WL 4939347, at *3; *Jerry WWHS Co.*, 2013 WL 504455, at *2 ("A district court can nonetheless entertain an action to enforce a settlement agreement if there is some independent basis for federal jurisdiction.") (internal citation omitted).

A review of the Complaint illustrates that complete diversity does not exist among the parties and thus diversity jurisdiction pursuant to 28 U.S.C. § 1332 is lacking. Compl. ¶¶ 4-6. Further, although the underling action involved a claim for unpaid contributions arising under ERISA, the instant motion does not require the Court to adjudicate a federal question arising under the statute, but, rather, seeks only to enforce the terms of settlement agreement and accompanying consent judgment, which requires only that the court apply principles of contract law. *See Jerry WWHS Co.*, 2013 WL 504455, at *3 ("[E]ven in ERISA cases, courts have found federal jurisdiction lacking where enforcing a settlement agreement requires applying principles of contract law as opposed to interpreting statutory provisions."); *Brown*, 2012 WL 628496, at *2–3; *LaBarbera*, 2007 WL 1531895, at *2 (finding no subject matter jurisdiction to enforce an ERISA settlement and noting that "[a]ctions to enforce settlement agreements are, in essence, contract actions which are governed by state law"); *Bricklayers & Allied Craftworkers Local 2,*

17

*Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *3 ("While the Court is mindful of the federal courts' exclusive jurisdiction over ERISA matters and also of the clear ubiquity of federal issues in Plaintiffs' initial Complaint, the Court concludes that the Motion and the request that the Court enforce the Agreement require a state law contract analysis and do not implicate the niceties of ERISA."); *see also Peacock v. Thomas*, 516 U.S. 349, 358–59, 116 S. Ct. 862, 869, 133 L. Ed. 2d 817 (1996) ("The alleged wrongdoing in this case occurred after the ERISA judgment was entered . . . Other than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case."); *but see Burke v. Lash Work Environments, Inc.*, 408 F. App'x 438, 439–41 (2d Cir. 2011).[5]  As such, "[a]bsent any need to interpret provisions of ERISA or apply federal law, the resolution of this matter falls outside of the province of the federal courts and would appropriately be resolved as a contract dispute in state court." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund ex rel. O'Sick*, 2012 WL 3508931, at *5; *see In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) (recognizing that "motion[s] to enforce or otherwise apply a settlement in a case that [a federal court] has previously dismissed . . . are essentially state-law contract claims to be litigated in the

---

[5]      In *Burke*, a pension fund and its trustees brought suit against an employer and related entities alleging that defendants had breached a settlement agreement arising out of claims under ERISA.  The district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction, and the Second Circuit reversed. *Burke*, 408 F. App'x at 438–41.  However, *Burke* is distinguishable since it arose following an alleged breach of a settlement agreement. That is, the federal claims that the plaintiffs alleged in their complaint were directly predicated on the breached agreement. *See generally id.*  Thus, the alleged settlement agreement violation and ERISA violations in *Burke* were inextricably linked.  Here, on the other hand, Plaintiffs' Complaint alleged ERISA violations and the settlement agreement represented a later effort to resolve these allegations.  Upon executing the settlement agreement in the instant case, the action was dismissed and the case was closed.  Therefore, the Court concludes that *Burke* does not speak directly to the facts and procedural posture presented by the case at bar, where the Court must address a motion to enforce a settlement agreement independent from a complaint stating ERISA violations based upon a breached settlement agreement.

state courts.") (internal citation omitted); *Bryant*, 2011 WL 3876978, at *6 (stating that disputes over federal settlements, even those that resolve federal claims, are "quintessentially . . . of contractual interpretation and performance and wholly governed by state law"); *LaBarbera*, 2007 WL 1531895, at *2 ("Actions to enforce settlement agreements are, in essence, contract actions which are governed by state law and which do not themselves raise a federal question unless the court which approved the settlement retained jurisdiction."); *see also Stone*, 2011 WL 2747572, at *2 ("Plaintiff's request to enforce the Second Settlement Agreement may, however, as a contract claim, be pursued in state court.").

Although it was clearly Plaintiffs' intent to seek enforcement of the Stipulation of Settlement and proposed Consent Judgment in this forum, the necessary jurisdictional predicate is lacking based upon the present procedural posture of this action. As such, this Court must respectfully recommend to Judge Seybert that Plaintiffs' motion be DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Plaintiffs' motion to enforce the Settlement Agreement be DENIED.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**.

Dated: Central Islip, New York
       February 27, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge